IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

WILLIAM OWENS,                          *

    Plaintiff,                          *

vs.                                     *

                                CASE NO. 3:21-CV-84 (CDL)

LOGAN PROPES, R.V. WATTS, and           *
THE CITY OF MONROE,
                           *

    Defendants.                         *
_____ *

## O R D E R

William Owens, the City of Monroe's former fire chief, claims that Defendants terminated him from his job in retaliation for exercising his First Amendment Rights and for reporting unlawful acts by City officials. Owens also asserts that Defendants illegally accessed the Apple watch of someone with whom he had an "intimate" relationship and violated Owens's right to privacy. Defendants moved to dismiss all of Owens's claims. For the reasons set forth below, the motion to dismiss (ECF No. 17) is granted as to all of Owens's claims except his First Amendment public speech claim against the City and Logan Propes and his Georgia Whistleblower Act claim against the City.

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556. But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

## FACTUAL ALLEGATIONS

William Owens was the City of Monroe's fire chief. Logan Propes is Monroe's city administrator, and R.V. Watts is the City's police chief.  The City offered a program called "Shop with a Hero," which was started by a group of local realtors but was under Propes's control.  Am. Compl. ¶¶ 39, 42, ECF No. 14. The program included fire department personnel and other first responders.  In light of citizen inquiries about how program funds were used, Owens publicly suggested that the program be run by a private non-profit organization, not the City. *Id.* ¶ 41.  After Owens made these comments, Propes, who was Owens's direct supervisor, recommended that the City terminate Owens

from his position as fire chief, and the City did so.  *Id.* ¶ 45.
Owens alleges that his public comments about the "Shop with a
Hero" program were a motivating factor behind this decision.
*Id.*

During the same timeframe, Watts and Propes learned that
Owens had a relationship with K.I.  Owens does not allege any
specific facts about his relationship with K.I.—only that he had
a "professional and personal relationship with K.I." and that
the relationship was "intimate."  *Id.* ¶ 11.  Owens and K.I. had
regular electronic communications via their personal electronic
devices, including K.I.'s Apple watch.  In May 2020, K.I. was in
the hospital for surgery, and K.I.'s son accessed K.I.'s Apple
watch and discovered communications between Owens and K.I.
K.I.'s son shared the communications from the Apple watch with
Watts and Propes.  Watts and Propes later shared the
communications with other individuals.  K.I.'s son asked Propes
to terminate Owens from his position as fire chief based on the
communications he found on the Apple watch.  Propes later
demanded that Owens resign and threatened that if he did not,
Owens would be terminated for "conduct unbecoming" based on his
relationship with K.I.  *Id.* ¶ 25.  Owens advised the City of the
actions taken by Watts and Propes with regard to K.I.'s Apple
watch.  Soon after that, Owens was terminated from his job as
fire chief.

DISCUSSION

Owens asserts three claims against Watts, Propes, and the City pursuant to 42 U.S.C. § 1983: (1) First Amendment claim that Defendants retaliated against him for commenting on the "Shop with a Hero" program, (2) First Amendment claim that Defendants interfered with his right to associate with K.I., and (3) Fourth Amendment claim based on accessing the electronic communications on K.I.'s Apple watch. Owens also contends that when Watts and Propes accessed the stored communications on K.I.'s Apple watch, they violated the federal Stored Communications Act, as well as Georgia law. Finally, Owens claims the City retaliated against him in violation of the Georgia Whistleblower Protection Act after he reported Watts and Propes for accessing and disclosing stored communications on K.I.'s Apple watch. The Court addresses each claim in turn.

## I.   First Amendment Public Speech Claim

Owens alleges that his public comments on the "Shop with a Hero" program were a motivating factor behind his termination. The Supreme Court "has made clear that public employees do not surrender" their free speech rights entirely "by reason of their employment." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). The First Amendment still provides some protection for a public employee who speaks (1) "as a citizen" (2) "addressing matters of public concern." *Id.* If the employee speaks as a citizen

4

addressing matters of public concern, the Court must determine whether the employee's speech merits protection under the balancing test established in *Pickering v. Board of Education*, 391 U.S. 563 (1968). *Garcetti*, 547 U.S. at 418.

Defendants do not dispute that Owens addressed a matter of public concern when he proposed a management change for the "Shop with a Hero" program in light of missing funds and questions about how the program's funds were being spent. As the Supreme Court recognized, "[e]xposing governmental inefficiency and misconduct is a matter of considerable significance." *Garcetti*, 547 U.S. at 425. Defendants argue, however, that Owens was not speaking as a "citizen." An employee does not speak as a citizen if his speech "owes its existence to" his "professional responsibilities." *Garcetti*, 547 U.S. at 421–22 (concluding that an internal memorandum prepared by a prosecutor in the course of his ordinary job responsibilities was not speech "as a citizen"). But the fact that a person's "speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." *Lane v. Franks*, 573 U.S. 228, 240 (2014). Instead, the critical question "is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.* at 239-240 (noting that testimony in a criminal trial,

compelled by subpoena, is speech outside the employee's ordinary job responsibilities—thus citizen speech—even if it relates to his public employment).

Owens's complaint contains no details about the context of his public comments regarding the "Shop with a Hero" program. His brief in opposition to the pending motion to dismiss explains that he commented on the program during a public meeting. The complaint also omits any allegations that Owens had any role in the "Shop with a Hero" program as part of his job as the fire chief or that the program was part of his ordinary job responsibilities. Rather, he alleges that while fire department personnel and other first responders could participate in the program, the program was started by realtors and administered by the City administrator. Owens's complaint also makes no allegation that he learned about funding issues regarding the program in his capacity as fire chief but that citizen inquiries regarding the program's finances led him to recommend that the program be administered by someone other than the City administrator. Taking the allegations of the complaint as true and drawing all reasonable inferences in Owens's favor, as the Court must do at this stage in the litigation, Owens adequately alleges that the purpose of his speech was to raise issues of public concern, not to air a private employee grievance. Thus, Owens sufficiently alleged that he spoke as a

"citizen" and that his speech was eligible for constitutional protection.

The next question is whether Owens's speech as alleged in the amended complaint merits protection under the *Pickering* balancing test. The "government has an interest in preventing speech that is disruptive to the efficient rendering of public services." *Akins v. Fulton Cnty.,* 420 F.3d 1293, 1304 (11th Cir. 2005). Defendants argue that this concern—particularly the reputation of the City's fire department—is paramount here and that Owens's comments about a program run by the City administrator could cause the public to lose confidence in the fire department. In support of this argument, Defendants cite *Busby v. City of Orlando*, where a police department employee reported malfeasance by her supervisors and the department sought to delay (but not prevent) her access to a public forum until after the internal affairs division could investigate her complaints, since her allegations would disrupt the efficient operation of the police department. 931 F.2d 764, 774 (11th Cir. 1991) (per curiam). Importantly, Owens's alleged speech here did not implicate the efficient operation of the fire department. Furthermore, there is no allegation that an investigation of the program was pending at the time Owens made his comments and thus no indication his comments disrupted a pending investigation. Under the circumstances, it is unclear

how preventing Owens's alleged speech would aid the City's interest in efficiency given that it alleged financial discrepancies in the "Shop with a Hero" program and would potentially lead to more efficient operation of the program. As a result, Owens's interest in this alleged speech is high, and the City's interest in preventing this kind of speech is low. *See Akins*, 420 F.3d at 1304 (finding that whistleblower's report of alleged bidding irregularities was protected under *Pickering*). The speech alleged in Owens's amended complaint thus qualifies for protection under the *Pickering* test.

In summary, Owens adequately alleges that his speech regarding the "Shop with a Hero" program was protected by the First Amendment and that it was a motivating factor in the City's decision to terminate him. Accordingly, he states a First Amendment retaliation claim.

Defendants argue that even if Owens adequately alleged a First Amendment retaliation claim based on his speech, the claims against the individual defendants should be dismissed based on qualified immunity. Owens did not allege that Watts was involved in the decision to terminate him for making public comments about the "Shop with a Hero" program. Thus, Owens did not allege that Watts committed a constitutional violation, and to the extent that Owens attempts to assert a First Amendment retaliation claim against Watts, it is dismissed. Propes's

qualified immunity argument for this claim is based solely on his contention that Owens's speech regarding the "Shop with a Hero" was not protected under the First Amendment. As discussed above, it was. *Cf. Akins*, 420 F.3d at 1308 (finding that whistleblower speech regarding financial irregularities was clearly protected under the First Amendment). Propes's motion to dismiss this claim is denied.

Finally, Defendants argue that the claim against the City should be dismissed for failure to allege a factual basis for municipal liability. But Owens alleges that *the City* took the *official action* of terminating him and that Owens's public comments regarding the "Shop with a Hero" program were a motivating factor behind this decision. These allegations combined with other allegations in the complaint sufficiently state a claim for municipal liability, and the City's motion to dismiss this claim is denied.

## II.  First Amendment Freedom of Association Claim

In addition to his claim that he was terminated for exercising his First Amendment right to freedom of speech, Owens alleges that he was terminated for his intimate association with K.I. The First Amendment protects "intimate association"—the freedom "to enter into and maintain certain intimate human

relationships."[1]   *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617 (1984).   Such relationships are protected "against undue intrusion by the State" as a "fundamental element of personal liberty" "because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." *Id.* at 618.   "At a minimum, the right of intimate association encompasses the personal relationships that attend the creation and sustenance of a family—marriage, childbirth, the raising and education of children, and cohabitation with one's relatives." *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994) (citing *Roberts*, 468 U.S. at 619); *accord Fetchick v. Seminole Cnty.*, 719 F. App'x 973, 974 (11th Cir. 2018) (per curiam).   "Whether the right extends to other relationships depends on the extent to which those attachments share the qualities distinctive to family relationships, such as 'relative smallness' and 'seclusion from others in critical aspects of the relationship.'" *McCabe*, 12 F.3d at 1563 (quoting *Roberts*, 468 U.S. at 620).   In addition to family relationships, the Eleventh Circuit has concluded that the First Amendment

---

[1] The right is not absolute; a government can burden a public employee's right to association if the exercise of that right impacts certain important governmental concerns, including "discipline, morale, harmony, uniformity, and trust in the ranks." *Starling v. Bd. Of Cnty. Comm'rs*, 602 F.3d 1257, 1261 (11th Cir. 2010).   In *Starling*, for example, the Eleventh Circuit found that a county had a strong interest in regulating romantic relationships between fire department supervisors and their subordinates and did not violate the First Amendment when it demoted a fire chief who engaged in an extramarital affair with a firefighter on his team. *Id.* at 1262.

protected a four-year dating relationship. *Wilson v. Taylor*, 733 F.2d 1539, 1544 & n.3 (11th Cir. 1984), *abrogated on other grounds as recognized in Scala v. City of Winter Park*, 116 F.3d 1396, 1402 n.4 (11th Cir. 1997).[2]

Here, Owens summarily alleges that he had an "intimate" relationship with K.I. that was "professional and personal." Am. Compl. ¶ 11. Owens alleges no facts whatsoever about the relationship. Were Owens and K.I. relatives? Were they dating each other exclusively? Casually dating? Special friends? Did they live together? Plan to get married? Did K.I. have a business relationship with the City?[3] It is impossible to tell from the amended complaint. Owens relies heavily on *Robinson v. City of Darien*, where a police investigator had an "exclusive" romantic relationship with his married coworker. *Robinson v. City of Darien*, 362 F. Supp. 3d 1345, 1352 (S.D. Ga. 2019). The district judge *assumed without deciding* that the relationship was protected, and she concluded that genuine fact disputes precluded summary judgment on the issue of whether the city's interest outweighed the plaintiff's interest in exercising his intimate association rights. *Id.* at 1373, 1375; *see also*

---

[2] The Eleventh Circuit emphasized that its holding in *Wilson* was narrow and that some associations may be grounds for discipline if they implicate a significant government interest; that issue, though, was not presented to the court in *Wilson*. *Wilson*, 733 F.2d at 1544 n.3.

[3] In his brief, Owens asserts that K.I. was not a coworker, though he alleges in his amended complaint that he had a "professional" relationship with K.I. Am. Compl. ¶ 11.

*Starling*, 602 F.3d at 1261 (assuming without deciding that a fire captain's extramarital affair with a subordinate—with whom he cohabitated—was protected under the First Amendment).  But here, Owens does not offer any *factual allegations* regarding his own relationship with K.I from which this Court can determine whether his claim is plausible.  It would be sheer speculation to find from the conclusory allegations that Owens and K.I. had a protected intimate association.  Because Owens's amended complaint lacks sufficient factual matter to support a First Amendment intimate association claim, that claim is dismissed.

**III. Claims Based on the Accessing of K.I.'s Apple Watch Data**

In addition to his claims under the First Amendment, Owens asserts two federal law claims based on Defendants' conduct in accessing the data on K.I.'s Apple watch: a claim under the Stored Communications Act, 18 U.S.C. §§ 2701 to 2713, and a claim under the Fourth Amendment.  He also claims that Defendants violated Georgia law by intercepting electronic communications on the Apple watch and by publicly disclosing private facts about him.

<u>A.</u>  <u>The Stored Communications Act Claim</u>

A person aggrieved by a knowing violation of the Stored Communications Act may bring a civil action against the person or entity that committed the violation.  18 U.S.C. § 2707(a).  A person violates the Act if he "intentionally accesses without

authorization a facility through which an electronic communication service is provided . . . and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system." 18 U.S.C. § 2701(a).  The Act does not define "facility."  It does define "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications."  18 U.S.C. § 2510(15); *accord* 18 U.S.C. § 2711(a) (adopting terms defined in 18 U.S.C. § 2510).  The Act also defines "electronic storage" as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof" and "any storage of such communication by an electronic communication service for purposes of backup protection of such communication."  18 U.S.C. § § 2510(17).  Thus, the statute clearly applies to communications stored with communication service providers like internet and email service providers. *United States v. Steiger*, 318 F.3d 1039, 1049 (11th Cir. 2003).

The Eleventh Circuit has found that a cloud-based service which "provides the ability to send and receive emails" is a "facility" within the meaning of the Stored Communications Act. *Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1177 n.4 (11th Cir. 2017).  But the Eleventh Circuit has not interpreted the term "facility" to include a personal electronic device on

which data is stored.  In *Steiger*, an anonymous hacker accessed the defendant's personal computer and retrieved information that was stored on the hard drive.  318 F.3d at 1049.  If the hacker had "accessed and retrieved" information stored with the defendant's internet service provider, that may violate the Stored Communications Act, but the Eleventh Circuit concluded that the Act does not apply "to hacking into personal computers to retrieve information stored therein."  *Id.*; *cf. Garcia v. City of Laredo,* 702 F.3d 788, 793 (5th Cir. 2012) (concluding that a smart phone was not a "facility" and that data stored on that phone was not "electronic storage" within the meaning of the Stored Communications Act).  Here, Owens alleges that Defendants accessed data that was "stored on" a device—K.I.'s Apple watch.  Am. Compl. ¶ 18; *accord id.* ¶ 54.  He does not allege that Defendants obtained any data from a "facility" like a cloud-based service provider.  Thus, Owens did not allege sufficient facts to support a claim under the Stored Communications Act.  This claim is dismissed.

>    B.   The Fourth Amendment Claim

Owens also claims that Defendants' accessing the Apple watch violated the Fourth Amendment.  The Fourth Amendment protects persons from "unreasonable searches and seizures."  U.S. Const. amend. IV.  Defendants seek dismissal of this claim based upon a lack of standing.  To satisfy the "case or

controversy" requirement established by Article III of the Constitution, a plaintiff must allege facts to show that he suffered an injury in fact that is fairly traceable to the challenged conduct of the defendant. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury in fact only exists if the defendant invaded a *legally protected* interest. *Id.*; *accord Smith v. Roundtree*, 704 F. App'x 831, 833 (11th Cir. 2017) (per curiam) (finding that landowners had no legally protected interest in property seized from a shed on their land because the seized property belonged to their adult children).

Fourth Amendment rights "are personal, and only individuals who actually enjoy the reasonable expectation of privacy have standing to challenge the validity of a government search." *United States v. Cooper*, 203 F.3d 1279, 1284 (11th Cir. 2000). So, to state a § 1983 claim for a violation of the Fourth Amendment, a plaintiff must allege that he had a constitutionally protected reasonable expectation of privacy in the thing searched or seized. A reasonable expectation of privacy exists if the person has a "subjective expectation of privacy in the object of the search" and "'society is prepared to recognize as reasonable' the expectation of privacy." *Smith v. Pelham*, No. 20-13210, 2021 WL 5863412, at *3 (11th Cir. Dec. 10, 2021) (quoting *United States v. King*, 509 F.3d 1338, 1341 (11th Cir. 2007) (per curiam)).

Individuals have a legitimate expectation of privacy in the contents of their own personal electronic devices, such as cellphones. *Riley v. California*, 573 U.S. 373, 403 (2014). But a person does not have a "legitimate expectation of privacy in information he voluntarily turns over to third parties." *United States v. Tercier*, 835 F. App'x 471, 481 (11th Cir. 2020) (quoting *Smith v. Maryland*, 442 U.S. 735, 743–44 (1979)). In *Tercier*, for example, a panel of the Eleventh Circuit found that the defendant had no expectation of privacy in a third party's cellphone. *Id.; cf. Pelham*, 2021 WL 5863412, at *4 (concluding that an employee had no "reasonable expectation of privacy in the information contained on her [government-owned] work computer, including the backup of her personal cell phone").

Here, Owens alleged no facts to suggest that he had a legitimate expectation of privacy in the object of the search—K.I.'s Apple watch. There is no allegation that Owens owned, possessed, controlled, or had the right to exclude others from K.I.'s Apple watch.[4]   Owens does point out that the Fourth

---

[4] In support of his argument that he has standing to assert a Fourth Amendment claim based on the search of K.I.'s apple watch, Owens cites unpublished district court orders *denying* criminal defendants' motions to suppress evidence. *See, e.g., United States v. Vega-Cervantes*, No. 1:14-CR-234-WSD, 2015 WL 4877657, at *9-10 (N.D. Ga. Aug. 13, 2015) (finding that the defendants did not maintain possession or control of a truck sufficient to support any expectation of privacy in the truck); *United States v. Dukes*, No. 2:16-CR-031-RWS-JCF, 2017 WL 11610362, at *4 (N.D. Ga. Aug. 1, 2017) (recommending that a defendant's motion to suppress be denied because he did not establish a reasonable expectation of privacy in the apartment that was searched since he did not show that he was legitimately in the apartment).

Amendment encompasses an individual's expectation of privacy in his personal movements and thus protects against the government's warrantless acquisition of the cell-site location information *from the individual's own cell phone*. *Carpenter v. United States*, 138 S. Ct. 2206, 2219 (2018). But *Carpenter* does not establish that an individual has any expectation of privacy in *someone else's* personal electronic device under the factual circumstances alleged here.

For all of these reasons, Owens's Fourth Amendment claim fails and is dismissed, as is his parallel claim under the Georgia Constitution. *See Brown v. State*, 750 S.E.2d 148, 154 n.6 (Ga. 2013) (concluding that Ga. Const. of 1983, Art. I, Sec. I, Par. XIII—which contains the same language as the Fourth Amendment—is coextensive with the Fourth Amendment).

### C.   State Law Claims

In addition to his federal law claims based on the search of K.I.'s Apple watch, Owens asserts a state law claim for interception of electronic communications under O.C.G.A. § 16-11-64. That statute is part of Georgia's criminal statutory scheme related to wiretapping, eavesdropping, and surveillance offenses. It permits law enforcement officers to conduct surveillance of suspects, but a warrant is required for law enforcement officers to use a device (like an apparatus for intercepting electronic communications) for such surveillance.

Even if the statute created a private right of action, Owens does not allege any facts to suggest that that Propes or Watts used a device to intercept communications between Owens and K.I. Rather, he alleges that they directly accessed the Apple watch on which the communications were stored after K.I.'s son gave them permission to do so.  His interception of electronic communications claim thus fails and is dismissed.

Owens also asserts an invasion of privacy claim.  Owens claims that Watts and Propes obtained "private and secret facts" about the Plaintiff, that they made the facts "public," and that the disclosure was "embarrassing."  Am. Compl.  ¶¶ 69–70. Georgia law recognizes a tort claim based on "public disclosure of embarrassing private facts about the plaintiff." *Dep't of Lab. v. McConnell*, 828 S.E.2d 352, 359 (Ga. 2019) (quoting *Bullard v. MRA Holding, LLC*, 740 S.E.2d 622, 626 (Ga. 2013)). To state such a claim, a plaintiff must allege (1) a public disclosure of (2) "private, secluded or secret facts," the disclosure of which would be (3) "offensive and objectionable to a reasonable man of ordinary sensibilities under the circumstances." *Id.* (quoting *Cottrell v. Smith*, 788 S.E.2d 772, 786 (Ga. 2016)).

Owens provides no specific facts to support this claim. There is no allegation regarding who received the disclosure—was it one person, a small group of people, or a lot of people?  If

there was not a widespread disclosure, then there is no "public disclosure." *280 Partners, LLC v. Bank of N. Ga.*, 835 S.E.2d 377, 383 (Ga. Ct. App. 2019).  Owens also provided no facts regarding the substance of the disclosure, so it is impossible to tell whether the disclosure truly included objectionable secret facts.  *See McConnell*, 828 S.E.2d at 360 (comparing private facts sufficient to establish invasion of privacy claim to private facts that were insufficient).  Furthermore, there is no indication that the facts Owens needs to state a claim are beyond his current reach and that he thus deserves an opportunity to find them during discovery.  He has failed to satisfy the Court that such discovery would likely disclose facts supporting a plausible invasion of privacy claim.  Owens's invasion of privacy claim is dismissed.[5]

## IV.  Georgia Whistleblower Act Claim

Finally, Owens makes a claim against the City under the Georgia Whistleblower Act, O.C.G.A. § 45-1-4(d)(2).  That statute prohibits a public employer from retaliating "against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency, unless the disclosure was made with knowledge that the disclosure was false or with reckless disregard for its

---

[5] The Court recognizes that Owens alleges that the private facts are embarrassing to him.  But if he wants to assert a legal claim based on the disclosure of these facts, he must explain what they are.

truth or falsity." O.C.G.A. § 45-1-4(d)(2). Owens alleges that he, "personally and through his attorney, disclosed to the City a violation of O.C.G.A. § 16-11-64" by Watts and Propes. Am. Compl. ¶ 32. He further alleges that he was terminated from his position as fire chief in retaliation for this disclosure.

To state a claim under the Whistleblower Act, an employee must establish that "(1) he was employed by a public employer; (2) he made a protected disclosure or objection; (3) he suffered an adverse employment action; and (4) there is some causal relationship between the protected activity and the adverse employment action." *Albers v. Ga. Bd. of Regents of Univ. Sys. of Ga.*, 766 S.E.2d 520, 523 (Ga. Ct. App. 2014). Here, there is no dispute that Owens was a public employee employed by a public employer.

Defendants do not argue that Owens's disclosure was not protected, even if it was based on a mistaken understanding of the law. *Cf.* O.C.G.A. § 45-1-4(d)(2) (establishing that a disclosure of a violation of law is protected "unless the disclosure was made with knowledge that the disclosure was false or with reckless disregard for its truth or falsity"). And Defendants do not contend that Owens failed to allege a causal relationship between the protected activity and the adverse employment action; he did. Rather, Defendants argue that Owens only alleged that his lawyer disclosed a violation. But Owens

alleges that he too personally disclosed the alleged violation. Am. Compl. ¶ 32 ("The Plaintiff, personally and through his attorney, disclosed to the City the violation of O.C.G.A. § 16-11-64[.]").   The Defendants also argue that Plaintiff did not allege that he properly made the disclosure to his supervisor or to an agency of the City because he simply alleges that he made the disclosure "to the City."   *Id.*   Defendants did not point to any authority suggesting that a Whistleblower Act claim like Owens's, which adequately alleges a causal connection between the protected activity and the adverse employment action, nonetheless fails at the pleading stage because the plaintiff did not specifically allege which agency, department, or individuals received his disclosure.   Accordingly, the Whistleblower Act claim shall not be dismissed.

CONCLUSION

As discussed above, the Court dismisses all of Owens's claims except his First Amendment public speech claim against the City and Propes and his claim against the City under the Georgia Whistleblower Act.   The Court will separately enter a Rules 16/26 order, which will require the parties to submit a joint proposed scheduling order within 28 days of today's Order.

IT IS SO ORDERED, this 13th day of April, 2022.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA